**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| JOSHUA DONTAE CUMMINGS | * | |
| ADC #172826 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 4:24-cv-00952-JJV |
| | * | |
| CUMMINS UNIT, *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER[1]**

## I.    INTRODUCTION

Joshua Dontae Cummings ("Plaintiff") is a prisoner at the Cummins Unit of the Arkansas Division of Correction ("ADC") who has filed a *pro se* Amended Complaint alleging Defendants Warden Gary Musselwhite, Deputy Warden Robert Pierce, Warden Lewis Young, and Major Jimmy Coleman violated his Eighth Amendment rights by failing to protect him from other prisoners. (Doc. 4.)  All other claims and Defendants have been previously dismissed. (Doc. 25.) Defendants have filed a Motion for Summary Judgment arguing Plaintiff has failed to properly exhaust his available administrative remedies. (Docs. 28-30.)  Plaintiff has filed a Response. (Doc. 33.)  After careful consideration and for the following reasons, the Motion will be GRANTED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of

---

[1] On February 4, 2025, the parties consented to proceed before me.  (Doc. 19.)

demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    DISCUSSION

### A.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with

the specific procedural requirements of the incarcerating facility. *Id.* And, as will be explained, the ADC's exhaustion procedure is exacting.

The only exception to properly complying with the ADC's procedure is if administrative remedies are unavailable. 42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

### B.    ADC's Grievance Procedure

The ADC grievance procedure in effect at the time of the alleged constitutional violation was Administrative Directive 19-34 ("AD 19-34"), which establishes a three-step procedure. (Doc. 28-2.) A summary of that procedure is included in the Inmate Handbook, a full copy is available in the prison law library, and many of the requirements are included on the forms themselves. (*Id.* at § IV(C).)

First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (*Id.* at § IV(E)(1)). The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, <u>personnel involved</u> or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at § IV(E)(2)) (emphasis added.) Inmates are cautioned a "[g]rievance must <u>specifically name each individual involved</u> in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance

process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4)) (emphasis added.)  And the grievance form reminds prisoners to include the "name of personnel involved." (*Id.* at 20*.*)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days. (*Id.* § IV(E)(11) and (F)(1).)  At this stage, the grievance receives a formal number and is logged into eOMIS, which is the ADC's  computer system. (*Id*. § IV(F)(3).)  The Warden must provide a written response within twenty working days. (*Id*. § IV(F)(5) and (7).)

Third, an inmate who is dissatisfied with the grievance response, or who does not timely receive a response, must appeal within five working days to the appropriate ADC Deputy Director. (*Id*. § IV(F)(9).)  And that response ends the grievance process. (*Id*.)

### C.    Plaintiff's Grievances

In her sworn declaration, the Inmate Grievance Supervisor says Plaintiff filed two grievances specifically naming one of the Defendants or raising the failure to protect claims brought in this lawsuit. (Doc. 28-6 at 6-7.)  I will discuss each separately.

#### 1.    CU-24-604

On June 2, 2024, Plaintiff filed CU-24-604 requesting a one-person cell because his mental health issues made it difficult for him to get along with others  (Doc. 28-5 at 3.)  Plaintiff did not specifically name any prison officials as he was required to do by AD 19-34.  Warden Musselwhite began his response by saying "anticipated events" are non-grievable matters. (*Id.* at 1.)  However, he then went on to find the grievance had no merit because Plaintiff was in restrictive housing, which had additional monitoring and security, and he was not housed with anyone on his enemy alert or staff separation lists. (*Id.*) Warden Musselwhite then said if Plaintiff wanted to be placed

in protective custody, he would have to provide more detailed information to Defendant Major Coleman, who was the Chief of Security.  (*Id.*)

It is undisputed Plaintiff did not appeal the Warden's decision to step three.[2]  *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (prisoner must properly complete all steps of the prison's grievance procedure); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) (same). Plaintiff says he did not do so because "I was told that [there] was no need to appeal the matter because it was nothing more that can be done, it was resolved, in which it was not."  (Doc. 33 at 2.)  But Plaintiff does not explain if an inmate or prison official gave him that incorrect information or when he received it.  More importantly, the bottom of the Warden's response clearly explained the appeal process to Plaintiff.  (Doc. 28-5 at 5.)  And, as previously mentioned, a summary of the grievance procedure is included in the Inmate Handbook, with a full copy available in the prison law library. Because Plaintiff has failed to produce credible evidence that administrative remedies were unavailable to him to properly appeal the denial of this grievance, I find it did not properly exhaust any claims against Defendants.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (at summary judgment, the "respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact"); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the

---

[2] Defendants also argue this grievance is flawed because Plaintiff did not specifically name any of them in it.  They are partially correct.  The fact that Defendant Musselwhite read and resolved this grievance is not enough to satisfy the exhaustion requirement.  *See Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 24, 2013) (no exhaustion when a prisoner named two Wardens "as readers" of the grievance but did not say how they "were involved in the grieved incidents, as required by the Arkansas Department of Correction grievance policy").  In contrast, Defendant Coleman is specifically mentioned in the Warden's response, which could, arguably, be a partial waiver of the procedural default as to him.  *See Hammett,* 681 F.3d 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits").  However, I do not need to resolve that issue because it is undisputed Plaintiff did not appeal this grievance to the final stage.

plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

2.    **CU-24-1272**

On November 13, 2024, which was eight days <u>after</u> he filed this lawsuit, Plaintiff filed CU-24-1272 saying:

> I'm REWRITING this complaint against warden/designee head of operation Gary Musselwhite due to my prior grievance DISAPPEARING.  This complaint pertains to the breaking of grievance policy and procedures going on <u>two weeks</u>.  I wrote Mr. Musselwhite a request form seeking a valid explanation on why it takes me to ask multiple days for my grievances to get signed or why officers (certain ones) don't sign my grievances on other officers/wardens, and WHY in prior instances that the grievances that I written were gone completely without a trace? Grievance policies/procedures are being violated daily and barely a handful of problem solvers sign grievances willingly and Mr. Gary Musselwhite is WELL AWARE of these facts through the request I wrote him in which he intentionally gave no reply.  It's been almost <u>2 weeks</u>.

(Doc. 28-4 at 5) (emphasis added.)  By referring to the last two weeks, it appears Plaintiff was saying the problems began in early November 2024.  The grievance coordinator rejected this grievance as being too vague.  (*Id*. at 4.)  On December 12, 2024, the Deputy Director agreed the grievance was properly rejected because it did not contain enough specific information for an investigation to be conducted.  (*Id*. at 3.)

I agree with Defendants that CU-24-1272 did not properly exhaust any claims remaining in this lawsuit because: (1) it did not mention a failure to protect Plaintiff from other inmates, and (2) the final decision was entered on December 12, 2024, which was <u>after</u> Plaintiff filed his Complaint and Amended Complaint in November 2024.  *See Muhammad v. Mayfield*, 933 F.3d 993, 1003 (8th Cir. 2019) (improper exhaustion when the issue raised during the administrative process was a "decidedly different issue" than the ones raised in federal court); *Townsend,* 898 F.3d at 784 (improper exhaustion when a prisoner's grievance did not contain "the specific factual

allegations that would later appear in his federal complaint"); *Johnson,* 340 F.3d at 627 ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies <u>before</u> filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory") (emphasis in the original).

Additionally, Plaintiff's assertions in CU-24-1272 that he was, generally, experiencing difficulties with the grievance process in early November 2024 does not mean he was actually prevented from exhausting the specific failure to protect claims he is raising against Defendants in this lawsuit or, as will be explained in the following section, that administrative remedies were unavailable for him to properly do so.

### 3.    Plaintiff's Informal Resolutions

In his summary judgment Response, Plaintiff says he filed three additional informal resolutions raising his failure to protect claim against Defendants. (Doc. 33.) On May 28, 2024, Plaintiff filed two unnumbered informal resolutions asking to be transferred to another unit to avoid gang members who intended to harm him. (*Id.* at 10, 11.) On May 29, 2024, the problem solver signed and dated both informal resolutions documenting their receipt. (*Id.*) Plaintiff says he did not proceed to step two because he never received a response to either informal resolution. However, AD 19-34 § IV(E) (11) says a prisoner must proceed to step two if he or she does not timely receive a response from the problem solver. (Doc. 28-2 at 8.) Plaintiff says he did not do so because he was "receiving false information on when to step 2 and I was still unfamiliar with the grievance procedure and I took prison officials word and got screwed around." (Doc. 33 at 2.) But this vague and unsupported allegation does not explain how unspecified prison officials misled Plaintiff about how to proceed to step two, which only required Plaintiff to complete one line on his copy of the informal resolution form. (Doc. 33 at 10, 11.) Further, Plaintiff's assertion is

7

contrary to his grievance history which shows that, in March and April 2024 (which was before he filed the two May 2024 informal resolutions), he properly proceeded to step two by filing five grievances. (Doc. 28-3.)

Next, on December 10, 2024, Plaintiff filed an informal resolution alleging all four Defendants were failing to protect him. (Doc. 33 at 13.) But Plaintiff says prison officials improperly returned it to him because they said the problem solver's signature was illegible. (Doc. 33 at 13.) Whether prison officials improperly rejected this informal resolution is irrelevant because it was filed <u>after</u> Plaintiff filed his Complaint and Amended Complaint in November 2024. (Docs. 2, 4.)

Finally, Plaintiff says he has kept copies of all of his grievances, but they do not "line-up" with or are missing from the grievance history chart provided by Defendants. (Docs. 28-3, Doc. 33 at 1, 3.) As previously mentioned, an informal resolution does not receive a number or get entered into eOMIS until the formal grievance is received at step two. (AD 19-34 § IV(F)(3).) For example, Plaintiff signed the informal resolution that later became CU-24-604 on June 2, 2024. (Doc. 28-5 at 1.) But it did not receive a number or get entered into eOMIS, as shown on Plaintiff's grievance history chart, until June 10, 2024, which is when the formal grievance was received at step two. (Doc. 28-3 at 1.) And, the two May 29, 2024 informal resolutions Plaintiff attached to his Response do not appear in the grievance history chart - at all - because Plaintiff never proceeded to step two, as he was required to do by AD-19-34. (*Id*.) Finally, although Plaintiff says he kept copies of all grievance forms he filed, he has not presented any evidence showing he fully and properly exhausted his failure to protect claim against Defendants before he filed this lawsuit in November 2024. Nor does the record contain evidence administrative remedies were unavailable for Plaintiff to properly do so. *See Trevino v. Woodbury Cnty. Jail*, Case No. 15-2179, 2015 WL

7729545, at *1 (8th Cir. Dec. 1, 2015) (affirming summary judgment when the record did not support a prisoner's assertion that officials prevented him from exhausting his administrative remedies); *Maddix v. Crawford*, Case No. 05-4119, 2007 WL 465518, at *1 (8th Cir. Feb. 14, 2007) (same); *Sergent v. Norris*, 330 F.3d 1084, 1085-86 (8th Cir. 2003) (same).  Accordingly,  I conclude Defendants are entitled to summary judgment. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

That being said, I have read Plaintiff's statements saying he should not be required to proceed with all steps of the ADC's grievance procedure when it is obvious from the initial responses that prison officials are not going to give him any help.  (Doc. 33 at 4.)  But, I can assure Plaintiff that after reviewing numerous grievances, that is not always the case.  And, I note that in his response to CU-24-604, Warden Musselwhite gave Plaintiff instructions on what he needed to do to obtain protective custody status.  (Doc. 28-5-at 1.)  Finally, as explained by the Eighth Circuit, the grievance process has the following important functions:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.    The Defendants' Motion for Summary Judgment (Doc. 28) is GRANTED.

2,    Plaintiff's failure to protect claims against Defendants Musselwhite, Pierce, Young, and Coleman are DISMISSED without prejudice, and this case is CLOSED.

3.    It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 18th day of April 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE